FEDERAL FARM MORTGAGE CORPORATION, APPELLEE, V. JOHN A. FISCHER, APPELLEE: ELIZABETH FISCHER ET AL., APPELLANTS, ARTHUR A. BOHN, INTERVENER, APPELLEE.

290 N. W. 444

FILED FEBRUARY 16, 1940. No. 30647.

*M. S. McDuffee,* for appellants.

*Moyer & Moyer, Philip M. Wellman, Franklin L. Pierce, M. B. Foster* and *Frederick M. Deutsch, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This is a foreclosure suit. The Federal Farm Mortgage Corporation instituted proceedings on its second mortgage, and Arthur A. Bohn set up his first mortgage by petition in intervention. The trial court decreed foreclosure of both mortgages. Louisa C. Fischer, the mortgagor's mother, who tried to establish a lien on the property, under an annuity agreement, superior to the rights of intervener Bohn, and Elizabeth Fischer, the mortgagor's wife, who sought to claim that the mortgage of intervener Bohn had a void acknowledgment and so was not a homestead lien, have appealed.

Two questions are controlling: (1) Did the annuity agreement existing in favor of Louisa C. Fischer create a charge or lien upon the property? (2) Was intervener's mortgage, on homestead property, acknowledged before a notary public who was disqualified, and so void?

The answer to the first question depends upon the provisions of a quitclaim deed executed by Louisa C. Fischer in favor of her son, defendant John A. Fischer, and of the annuity agreement executed concurrently by Fischer and his wife in favor of the mother. The mother, who was a widow, was a life tenant of the property and the son the remainderman. Prior to the encumbrances here involved, they had joined in executing a mortgage thereon. When this mortgage became due, the banker who had negotiated the loan for Fischer suggested that, in order to facilitate its refinancing or the making of a new loan, the mother ought to execute a conveyance of her life estate to the son. She accordingly executed a quitclaim deed, for "one dollar and other consideration," which did not purport to reserve any rights in the property and which made no reference to any other instrument. The son and his wife at the same time executed an instrument which recited that, as part of the purchase price for the property involved, they agreed "to pay to the said Louisa C. Fischer the sum of two hundred twenty-five dollars on the first day of March, 1931, and two hundred twenty-five dollars each and every six months thereafter during the natural life of the said Louisa C. Fischer." This instrument was acknowledged and was recorded at the same time as the quitclaim deed.

Since a vendor's lien has never been recognized in this state (*Edminster v. Higgins*, 6 Neb. 265), the payments under the annuity agreement would not constitute a lien in favor of defendant Louisa C. Fischer unless some right was reserved by her in the property at the time of the conveyance or unless a separate lien was created by manifest intent and agreement. A provision in a deed of conveyance for the payment of an annuity to the grantor is ordinarily held to constitute a charge or lien upon the land by way of reservation. *Pinkham v. Pinkham*, 60 Neb. 600, 83 N. W. 837; *Bankers Life Ins. Co. v. Ohrt*, 131 Neb. 858, 270 N. W. 497. A reservation will similarly be held to exist where a deed and a contract for an annuity are executed simultaneously as part of the same transaction and the contract is

specifically referred to in the deed so as to constitute a part of it. *Hylton v. Krueger,* 134 Neb. 66, 277 N. W. 792. But where, as here, the deed itself contains no provision for payment of an annuity and no specific reference to the contract by which such an obligation may at the same time have been created, there can be no reservation. Section 76-106, Comp. St. 1929, expressly provides: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred *from the terms used.*" (Italics ours.)

The right of Louisa C. Fischer to a lien in this case depends therefore solely upon the terms of the separate annuity agreement. Since no reservation is involved, the language used in the agreement must be such as would be sufficient in any independent instrument to create a lien on the property. A mere promise in writing to pay an annuity, as part of the consideration for a conveyance, is not enough. An intention to constitute the land as security for the performance of the annuity obligation must clearly appear (3 Tiffany, Real Property (2d ed.) 2748, sec. 661), and where, as here, third party rights are involved, this necessarily can be done only by the use of language effectual to create an actual lien. The annuity agreement in this case contains no such language, and the trial court therefore properly held that it was not a lien on the land.

The remaining question is whether intervener Bohn's mortgage was acknowledged before a disqualified notary public, so as to render it void as a homestead lien. The notary public was F. J. Dankers, who was a stockholder in and cashier of the First National Bank of Madison, Nebraska. Defendants contend that the bank was originally the real mortgagee under Bohn's mortgage, or that it at least had such a direct interest therein as to disqualify Dankers to act as notary public, and that the acknowledgment was accordingly void.

We cannot agree that the bank ever was the actual mortgagee. Ed Fricke, another officer of the bank, who engaged in the mortgage loan business on the side, had placed the

previous loan for the Fischers with a private investor. When it became due, John A. Fischer asked him to endeavor to renew it or to obtain a new loan for him. Fricke suggested that a large enough loan be obtained to pay off his indebtedness to the bank, which was not yet due but upon which the bank had been charging him 10 per cent. interest. Fricke then solicited intervener Bohn to make a loan of $7,500 to Fischer. Bohn agreed to do so, but said he would require a few days to raise the money. On the strength of the commitment, Fricke had the loan papers drawn up and the mortgage recorded. It had been his practice to have all loan papers drawn in his own name and to execute assignments to the lender. Papers were not drawn, however, until he had obtained an outside loan commitment.

The loan papers in this case appear to have been executed on August 30, 1930. Bohn did not have his money available until September 10, 1930. Fricke meanwhile had the mortgage recorded and at the same time prepared and apparently executed an assignment in favor of Bohn. The assignment was not delivered to Bohn, however, or recorded until September 10. As an accommodation to the parties, the bank advanced the $7,500, although the evidence does not indicate whether this was done as a charge against Bohn or Fricke, or how it was carried. In any event, Fischer's testimony shows that he knew the bank was not making the loan to him, nor did he consider that it had any interest in the mortgage. So far as the record indicates, the bank never held the note or mortgage in its possession or ever claimed any rights thereunder. On September 10, Bohn paid the bank the amount of its advance together with interest thereon. The burden rested on defendants to establish that the bank was the actual mortgagee, and the circumstances set out do not sustain the burden of this contention.

Defendants further contend, however, that the bank had a direct interest in the loan transaction, by reason of the fact that it was paid $3,900 out of the proceeds, and that in this situation Danker's interest as a stockholder disquali-

fied him to act as a notary public in taking the mortgage acknowledgment. It appears that, after the $7,500 had been credited to Fischer's account, he drew a check in favor of the bank for $3,900 to apply upon his indebtedness to it.

In *Quesner v. Novotny*, 116 Neb. 84, 215 N. W. 796, it was held that a notary public who is likewise a stockholder and an officer of a corporation is not disqualified from taking the acknowledgment to a homestead mortgage merely because part of the proceeds thereof are to be used to pay an indebtedness owing the corporation, where the latter is not an actual party to the mortgage either as the named mortgagee or as the holder of a beneficial interest therein. There is some logic in the contention that a pecuniary interest in the making of a mortgage ought to be as disqualifying as an interest in the instrument itself or in the enforcement thereof, but it is our duty to adhere to the rule adopted in *Quesner v. Novotny, supra,* since, in a situation such as this, instruments have undoubtedly been drawn in reliance upon the court's previous declarations, including perhaps the mortgage involved in this case.

Defendants cite *Wilson v. Griess,* 64 Neb. 792, 90 N. W. 866, and say that it cannot be distinguished from the present situation. In that case, however, the First National Bank of Sutton, which held a note from another bank for collection, took a mortgage upon the debtor's homestead, naming the other bank as mortgagee but including in its amount some indebtedness which he owed the First National Bank. It was properly held that the First National Bank thus had a beneficial interest in the mortgage itself, and that one of its stockholders and officers was accordingly disqualified from taking the acknowledgment as notary public.

Defendants rely, also, upon *Anderson v. Cusack,* 115 Neb. 643, 214 N. W. 73, but that case similarly is not in point. There a note and homestead mortgage were taken in the name of the president of a bank as collateral security for some indebtedness which the mortgagor owed the bank. The president obviously never had any personal rights in

the mortgage and was simply acting as trustee for the beneficial interests of the bank. In this situation, the acknowledgment, taken by a stockholder of the bank as notary public, indisputably was void.

In the present case, the First National Bank of Madison neither was the named mortgagee nor did it have any interest in the enforcement of the mortgage by virtue of a beneficial interest thereunder.

We have discussed the controlling questions upon their merits and have ignored the procedural hurdles attempted to be raised with respect to our consideration of them. This makes unnecessary the consideration of any of the other questions presented in the briefs.

The trial court properly allowed foreclosure of intervener Bohn's mortgage.

AFFIRMED.